[Cite as *Pancake v. Pancake*, 2013-Ohio-2294.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| JAMES S. PANCAKE | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 12-COA-038 |
| ALONA O. PANCAKE | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No.  09-DIV-160


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     June 3, 2013


APPEARANCES:

For Plaintiff-Appellant

CATHERINE D. GOLDMAN
WELDON, HUSTON & KEYSER
76 +North Mulberry Street
Mansfield, Ohio  44902

For Defendant-Appellee

RENEE J. JACKWOOD
JACKWOOD LAW OFFICE
132 East Liberty Street
Wooster, Ohio  44691

*Wise, J.*

{¶1} Appellant James S. Pancake appeals from his judgment entry of divorce from Appellee Alona O. Pancake in the Ashland County Court of Common Pleas, Domestic Relations Division. The relevant procedural facts leading to this appeal are as follows.

{¶2} Appellant James and Appellee Alona were married in May 2004 in Forest Lake, Minnesota. When they first met in 2003, appellant was approximately forty-two years old, while appellee, then a citizen of Ukraine, was twenty-one years old and spoke very little English. She has since become a naturalized United States citizen.

{¶3} Two children were born of the parties' marriage. At the times pertinent to this matter, appellant was self-employed as a dealer of granite products, while appellee was employed full-time at a frozen foods company. On August 29, 2009, appellant filed an action for divorce against appellee in the Ashland County Court of Common Pleas, Domestic Relations Division.

{¶4} The case proceeded to evidentiary hearings before a magistrate over the course of five days, concluding on June 6, 2011.

{¶5} On January 30, 2012, the magistrate filed a sixty-three page decision addressing the various contested issues in the divorce. Among other things, the magistrate set child support at $1,051.58 per month per child, assuming a provision of health insurance for the children. The court also ordered appellant to pay appellee spousal support of $1,000.00 per month for six years, effective August 31, 2010, with no retention of jurisdiction. Said spousal support was ordered to be terminated upon the death of either party, or remarriage or cohabitation by appellee.

{¶6} Appellant filed objections to the decision of the magistrate on February 13, 2012.

{¶7} The trial court reviewed the matter and issued a judgment entry on July 19, 2012 adopting the decision of the magistrate, except that an additional $1,386.00 was deducted as an ordinary and necessary business expense from appellant's self-employment income for child support purposes.

{¶8} A final decree of divorce was filed on September 25, 2012.

{¶9} On October 24, 2012, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

{¶10} "I. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN THE CALCULATION OF APPELLANT'S CHILD SUPPORT OBLIGATION BY: (A) FAILING TO INCLUDE ALL OF APPELLANT'S ORDINARY AND NECESSARY BUSINESS EXPENSES IN CALCULATING HIS INCOME, AND (B) INCLUDING A NONRECURRING 'SHAREHOLDER LOAN' TO APPELLANT AS INCOME.

{¶11} "II. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN AWARDING SPOUSAL SUPPORT BY: (A) FAILING TO INCLUDE ALL OF APPELLANT'S ORDINARY AND NECESSARY BUSINESS EXPENSES IN CALCULATING HIS INCOME, (B) INCLUDING A NONRECURRING 'SHAREHOLDER LOAN' TO APPELLANT AS INCOME, (C) AWARDING AN UNREASONABLE AMOUNT OF SPOUSAL SUPPORT, AND (D) ORDERING AN UNREASONABLE DURATION FOR SPOUSAL SUPPORT.

{¶12} "III. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN THE DIVISION OF PROPERTY BY AWARDING APPELLEE THE ENTIRE $25,000.00

CASH CONTENTS OF THE PARTIES' SAFETY DEPOSIT BOX AND INEQUITABLY OFFSETTING THAT AWARD WITH AN AWARD TO APPELLANT OF A PHANTOM $10,000.00 TO $25,000.00 OF OTHER SAFETY BOX CASH THAT WAS FOUND TO EXIST CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** "IV. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY FAILING TO IDENTIFY ALL OF THE DEBTS OF THE PARTIES AND EQUITABLY ALLOCATE RESPONSIBILITY FOR THEIR PAYMENT.

**{¶14}** "V. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY ITS AWARD OF ATTORNEY FEES TO APPELLEE IN THE AMOUNT OF $5000.00."

I.

**{¶15}** In his First Assignment of Error, appellant contends the trial court erred in calculating his annual income for purposes of the child support worksheet. We disagree.

**{¶16}** In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the Ohio Supreme Court determined that the abuse-of-discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911.

**{¶17}** R.C. 3119.01(C)(7) defines "gross income" as, with certain statutory exceptions, " *** the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income." R.C. 3119.01(C)(7) also states in pertinent part that gross income "includes *** self-generated income; and potential cash flow from any source."

**{¶18}** R.C. 3119.01(C)(13) defines "self-generated income" as "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. ***." R.C. 3119.01(C)(9)(a) in turn defines "ordinary and necessary expenses incurred in generating gross receipts" as "actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity."

{¶19} Appellant in the case sub judice first contends the trial court, in assessing appellant's self-employment income for use in the child support worksheet, improperly accounted for the expense of a forklift purchased as an asset in his business. As indicated in our recitation of facts, appellant is self-employed in a one-person business known as "Spectrum Granite." At trial, appellant asserted that the forklift, with an alleged cost basis of $9,386.00, was paid for using one of Spectrum's credit cards with charges spread out as follows: $4,000.00 in April 2010, $2,000.00 in June 2010, and $2,000.00 in October 2010. A final payment of $1,386.00 was then made via a Spectrum check in December 2010. The trial court allowed only the check payment of $1,386.00 as an ordinary and necessary business expense for the forklift purchase against appellant's income.

{¶20} However, because the trial court relied on the "actual cash items expended" language of R.C. 3119.01(C)(9) in disallowing the deductions for the credit card forklift payments, which could theoretically be deferred over time, we are disinclined upon review to find the court's treatment of this issue constituted an abuse of discretion.

{¶21} Appellant secondly contends the trial court improperly treated a shareholder loan to appellant as income for child support purposes. Specifically, appellant directs us to the trial court's conclusion that a $28,500.00 increase on Spectrum Granite's IRS Form 1120S sheet under "loans to shareholders" should be treated as income to appellant.

**{¶22}** R.C. 3119.01(C)(7)(e) excludes "nonrecurring or unsustainable income or cash flow items" from the categorization of gross income. This is clarified in R.C. 3119.01(C)(8), which reads as follows:

**{¶23}** " 'Nonrecurring or unsustainable income or cash flow item' means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. ***."

**{¶24}** In the case sub judice, the magistrate concluded as follows in regard to this issue:

**{¶25}** "The Plaintiff [Appellant] though, as the sole shareholder, received a cash payment in 2010 from the corporation of $28,500.00, that is reflected on line 7 of Schedule L of the Form 1120S. Although referred to as a loan to shareholders, the $28,500.00 is not a one-time payment to the Plaintiff from his corporation as the return indicates that $55,000.00 has previously been paid to the Plaintiff prior to 2010. The $28,500.00 is included in the Plaintiff's 2010 income for support purposes."

**{¶26}** Magistrate's Decision, January 30, 2012, at 20-21.

**{¶27}** The trial court, in adopting the magistrate's decision on this point, held:

**{¶28}** "In weighing the credibility of the witnesses, and the implausible testimony of Plaintiff, the Court finds that the Magistrate was correct to include the shareholder loans as income."

**{¶29}** Judgment Entry, July 19, 2012, at 3.

**{¶30}** Appellant maintains that the mere existence of a "beginning of the year" balance on the "Loans to Shareholders" item on the Spectrum Granite tax and

accounting documents does not necessarily imply that the current year loan continued a pattern of more than three years or that it could be expected to continue on a regular basis. He maintains that testimony from himself and his accountant both indicated the use of such loans was unsustainable in the long term. See Tr. at 850, 947. Appellant further maintains that the court's decision cannot be justified as a credibility call, as appellee purportedly offered no evidence of a pattern of loan taking that could support a conclusion that the loan was historically recurring for more than three years or would be sustainable in the future. There is no additional dispute, however, as to the accuracy of the magistrate's fundamental observation that the tax return documents indicated earlier such loans prior to 2010.

**{¶31}** We have recognized that "[t]he definitions of income under R.C. 3119.01 are broad and expansive to protect the child's best interests." *Vonderhaar–Ketron v. Ketron,* Fairfield App.No. 10 CA 22, 2010–Ohio–6593, ¶ 48, citing *Bishop v. Bishop,* Scioto App.No. 03CA2908, 2004–Ohio–4643, ¶ 16 (additional citation omitted). Upon review, we hold the trial court's decision as to appellant's income in regard to the shareholder loan issue did not rise to the level of an abuse of discretion.

**{¶32}** Appellant's First Assignment of Error is overruled.

II.

**{¶33}** In his Second Assignment of Error, appellant argues the trial court abused its discretion in its award of spousal support to appellee. We disagree.

**{¶34}** A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment;

it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, *supra*.

{¶35} R.C. 3105.18(C)(1)(a) thru (n) provides the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support:

{¶36} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted

from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."

**{¶37}** R.C. 3105.18 does not require the lower court to make specific findings of fact regarding spousal support awards. While R.C. 3105.18(C)(1) does set forth fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. *Carroll v. Carroll,* Delaware App.No. 2004-CAF-05035, 2004-Ohio-6710, ¶ 28, citing *Watkins v. Watkins,* Muskingum App. No. CT 2001-0066, 2002-Ohio-4237, (additional citations omitted).

**{¶38}** Appellant first reiterates his basic arguments as raised in his first assigned error; i.e., appellant essentially contends the trial court improperly calculated his income by including the non-cash payments for the forklift purchase and by including his "shareholder loan," thus creating an inaccurate basis for the calculation of spousal support. Based on our analysis in the first assigned error, we find these claims lack merit.

**{¶39}** Appellant next challenges the magistrate's utilization of a "FinPlan" worksheet that included an alleged overstatement of the Line 2 "self-employment income" figure by at least $32,000.00. Appellant asserts that this numerical figure is unexplained by any of the issues in the present appeal, has no basis in the evidence, and was presumably an input error by the magistrate. Appellant lastly maintains that the six-year duration of spousal support is excessive given the limited duration of the marriage (approximately five years, using the filing date of the divorce in 2009 as the end parameter).

**{¶40}** "A FinPlan analysis is a computer generated calculation performed by the magistrate that determines the amount of money each parent contributes to the household." *Carter v. Carter*, Summit App. No. 21156, 2003-Ohio-240, f.n. 1. "Many appellate districts have acknowledged the use of the FinPlan software when determining spousal and/or child support." *Cramblett v. Cramblett*, Harrison App.No. 05 HA 581, 2006-Ohio-4615, ¶55 (additional citations omitted).

**{¶41}** The record reveals that the trial court, upon reviewing appellant's objections to the decision of the magistrate, did not specifically revisit the FinPlan information, but it noted that "this case involves significant and unique facts regarding defendant's circumstances as a foreign national prior to the marriage and the nature of [the] establishment of the marital relationship." Judgment Entry, July 19, 2012, at 3. Because we indulge in the presumption that the court considered all the statutory factors (*Carroll, supra*), we are unpersuaded upon review of the record that the court abused its discretion in awarding spousal support of $1,000.00 per month, with the parameters set forth in the decree.

**{¶42}** Appellant's Second Assignment of Error is overruled.

III.

**{¶43}** In his Third Assignment of Error, appellant challenges the trial court's decision as to the division of property, particularly regarding cash funds held in safes or deposit boxes.

**{¶44}** Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall *** determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and

separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(C)(1) further states: "Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."

{¶45} "The concept of marital property is derived from the premise that marriage is a voluntary partnership of co-equal partners with a division of duties and labor that entitles each partner to a one-half interest in the assets accumulated from the fruits of the partnership activity while the marriage is functioning." *Tomlin v. Tomlin* (March 16, 1987), Montgomery App. No. 10094, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 350 N.E.2d 413. An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore, supra.*

{¶46} Although appellant insists that there was no direct evidence of $35,000.00 to $50,000.00 in marital cash, as determined by the trial court, the record reveals testimony by Victoria Tanner and Gale Tanner, who lived next door to the marital residence. Their testimony, read together, indicates that appellee obtained about one-half of a large sum of cash from a safe. The Tanners then assisted appellee in putting

$3,000.00 of it down on the purchase of a vehicle and turning the remaining $22,000.00 over to appellee's attorney's office. See Tr. at 1066-1078.

{¶47} In conducting our review, we are guided by the presumption that the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *See Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Furthermore, this Court has expressed its reluctance to engage in piecemeal review of individual aspects of a property division taken out of the context of the entire award. *See Harper v. Harper* (Oct. 11, 1996), Fairfield App.No. 95 CA 56, citing *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 459 N.E.2d 896.

{¶48} Upon review, we are unpersuaded that the trial court abused its discretion in its distribution of property as urged by appellant.

{¶49} Appellant's Third Assignment of Error is overruled.

IV.

{¶50} In his Fourth Assignment of Error, appellant contends the trial court abused its discretion by failing to adequately address certain credit card debts and money he purportedly owes his attorney. We disagree.

{¶51} Although Ohio's divorce statutes do not generally articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well. *Rowan v. Kemery,* Licking App. No. 10 CA 117, 2011–Ohio–2307, ¶ 49, citing *Vergitz v. Vergitz,* Jefferson App.No. 05 JE 52, 2007–Ohio–1395, ¶ 12.

**{¶52}** Appellant herein specifically asserts that his Citi credit card statements reflect charges incurred for the payment of his attorney fees and guardian ad litem fees he was ordered to pay during the pendency of this case in the amount of $16,000.00. *See* Plaintiff's Exhibit 16. Appellant further asserts that he owes his attorney an additional amount of $23,953.10. *See* Plaintiff's Exhibit 34.

**{¶53}** Although the magistrate's decision did not discuss the details of either of the aforesaid debts, the trial court concluded as follows in addressing appellant's objections:

**{¶54}** "The objection basically is an objection on the allocation of attorney and guardian ad litem fees which the Plaintiff has been ordered to pay through either Magistrate Orders issued throughout the litigation (GAL fees) or pursuant to the Magistrate's Decision (attorney fees). Plaintiff asserts that since he paid for those expenses through the use of his credit card, and since the credit card was a debt, said debt should have been accounted for in the property division. To do as the Plaintiff suggests would result in an inequitable shift of debt to require the Defendant to be liable for half of the attorney fees and guardian ad litem fees for which the Plaintiff should be liable. The Court finds that there was sufficient credible evidence to support the allocation of attorney fees and GAL fees throughout the case and the Magistrate appropriately applied the law."

**{¶55}** Judgment Entry, July 19, 2012, at 5.

**{¶56}** Upon review, we find the trial court fully considered the issue, and its redress thereof did not constitute an abuse of discretion or an improper division of the parties' property and debt.

{¶57} Appellant's Fourth Assignment of Error is overruled.

V.

{¶58} In his Fifth Assignment of Error, appellant maintains the trial court abused its discretion in ordering him to pay attorney fees of $5,000.00. We disagree.

{¶59} An award of attorney's fees lies within the sound discretion of the trial court. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 481 N.E.2d 609.

{¶60} R.C. 3105.73(A) states as follows:

{¶61} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

{¶62} Appellant essentially contends the attorney fee award of $5,000.00 was an abuse of discretion where the trial court had issued a temporary order allowing appellee to use marital cash in the amount of $22,000.00 for her attorney fees and litigation expenses. Thus, appellant argues, the trial court has effectively allowed appellee a combined $27,000.00 for her attorney fees, while, as he has previously argued, the court did not consider for property division purposes the debt he incurred directly to his counsel, and refused to consider for property division purposes the credit card debt he used to pay his counsel and the guardian ad litem.

{¶63} However, in consideration of the disparate economic situations of the parties after separation and the protracted nature of these divorce proceedings, we are

unable to conclude that the $5,000.00 attorney fee award to appellee rose to the level of an abuse of discretion.

**{¶64}** Appellant's Fifth Assignment of Error is therefore overruled.

**{¶65}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Domestic Relations Division, Ashland County, is hereby affirmed.

By: Wise, J.

Baldwin, J., concurs.

Hoffman, P. J., concurs in part and dissents in part.

 

_____

_____

_____

                                                                 JUDGES

JWW/d 0503

*Hoffman, P.J., concurring in part and dissenting in part*

{¶66} I concur in the majority's analysis and disposition of Appellant's fourth and fifth assignments of error.

{¶67} I also concur in the majority's disposition of Appellant's third assignment of error. I write separately thereon only to note my disapproval of reference to this Court's "reluctance to engage in piecemeal review" as additional justification for overruling the third assignment of error.

{¶68} I further concur in the majority's analysis and decision to affirm the trial court's handling of the fork lift purchase. While Appellant argues the fork lift was "paid for in its entirety" in 2010, and "the method of payment should not control", the fact remains credit card charges are not the same as actual cash expenditures. Only when the credit card charges are paid off may the amounts be excluded from gross income as actual cash expenditures. The method of payment does, indeed, matter.

{¶69} I respectfully dissent from the majority's decision to include the $28,500.00 shareholder "loan" made in 2010 as income. I find there is insufficient evidence to conclude it was a recurring or sustainable income or cash flow as defined in R.C. 3119.01(C)(8). While I find it error to have included it as "income", I would note it is within the trial court's discretion to justify deviation upward from the child worksheet because of the subject loan as there was evidence of a prior $55,000.00 shareholder loan and Appellant is solely responsible for making the loan and possibly forgiving it at any time.

_____
HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

JAMES S. PANCAKE      :
              :
 Plaintiff-Appellant    :
              :
-vs-           :    JUDGMENT ENTRY
              :
ALONA O. PANCAKE     :
              :
 Defendant-Appellee   :    Case No. 12-COA-038

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Ashland County, Ohio, is affirmed.

Costs assessed to appellant.

             _____

             _____

             _____

                JUDGES